IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL LUIS OTERO-MERCADO, on his own and in representation of the CONJUGAL PARTNERSHIP constituted with his wife Luz M. Arroyo-Lozano<br><br>Plaintiffs<br><br>vs<br><br>BRISTOL-MYERS SQUIBB PUERTO RICO, INC.; BRISTOL-MYERS SQUIBB HOLDING PHARMA, LTD. LIABILITY COMPANY; JOHNSON CONTROLS OF PUERTO RICO, INC.; JOHNSON CONTROLS, INC.; JOHN DOE<br><br>Defendants | CIVIL 12-1256CCC |

**ORDER**

Plaintiff Angel Luis Otero-Mercado, his spouse and conjugal partnership, filed this lawsuit before the Commonwealth of Puerto Rico Court of First Instance, Arecibo Part, on April 3, 2012, claiming that he had been wrongfully terminated by his employer, Bristol-Myers Squibb Puerto Rico, Inc. (Bristol)[1] in violation of the Puerto Rico Workmen's Accident Compensation Act (WACA), specifically 11 L.P.R.A. § 7, which established an employee's right to be restored to his job within a term limit of twelve (12) months if he met the conditions set forth therein. The employee directly ties his dismissal from Bristol to defendants' conduct in violation of the protection afforded him by this statute. His relevant allegations on the illegal discharge and retaliation claims are the following:

> 7. The Plaintiff began to work as a permanent employee for an unlimited period for the Defendant on January 22, 1990, as a Level 3 Engineering and Reliability Technician. At the time of the events which gave rise to the present Complaint, his position was a Maintenance and Reliability Specialist, and he performed substantially the same functions which he had previously performed in his position as an Engineering and Reliability

---

[1] Plaintiffs also sued Bristol-Myers Squibb Holding Pharma, LTD Liability Company and Johnson Controls of Puerto Rico, Inc., referred to at paragraph 4 of the complaint as "the successor employer of Bristol."

CIVIL 12-1256CCC                    2

Technician. The Plaintiff was working a regular, full-time workweek and his last salary was paid at the rate of $23.86 per hour.

8.    In order to carry out the tasks assigned by his employer BRISTOL, the Plaintiff worked on August 23, 2010, in an uninterrupted manner at the plant from 6:00 a.m. until 2:00 a.m., on August 24, 2010.

9.    The Plaintiff was responsible for removing and installing a 112 KVA transformer, weighing approximately 785 pounds, as part of the tasks performed by the Plaintiff in the shift worked from August 23 to 24, 2010.

10.    On September 2, 2010, the Plaintiff reported to the State Insurance Fund Corporation (hereafter "SIFC") because of pain in his back related to his job. From that date on, the Plaintiff began to receive treatment while off from work.

11.    **On August 25, 2011, the State Insurance Fund Corporation gave him authorization to continue to work so that he could be reinstated in his job while continuing to receive treatment. That same day, the Plaintiff contacted the medical department of Bristol by phone and by email to tell them about the decision of the Fund. On that occasion, BRISTOL gave him an appointment to go to his place of work on August 28, 2011.**

12.    **On August 28, 2011, as coordinated with BRISTOL, the Plaintiff reported to his work station and requested that he be allowed to be reinstated in his position.**

13.    **However, when he reported to BRISTOL, the Human Resources Department informed him that they no longer had his position available for him, as a result of which they had to give him an employment termination letter.**

16.    On September 21, 2011, BRISTOL sent a letter to the Plaintiff in which it informed him of his dismissal, effective September 8, 2011.

17.    In his letter of dismissal, BRISTOL informed the Plaintiff of its decision to terminate his job and the reasons for this action.

18.    **The justification given in the letter of dismissal to the Plaintiff was the alleged subcontracting of JOHNSON CONTROLS, in regard to the position which the Plaintiff held and to which he requested that he be reinstated.**

20.    **In the letter of dismissal dated September 21, 2011, BRISTOL notified the Plaintiff that, due to the fact that he was reporting to the State Insurance Fund at the same time as the alleged transfer had taken place, it was not possible for JOHNSON CONTROLS to extend an offer of employment to him.**

23.    **The Plaintiff was dismissed from his job because he had not been hired by JOHNSON CONTROLS, given he was already reporting to**

**the State Insurance Fund Corporation at the time that the subcontracting occurred.**

25.  **The behavior of the Co-Defendants constitutes a violation of the provisions of Article 5 of the Workers' Compensation Act, better known as the State Insurance Fund Corporation Law, Law No. 45, dated April 18, 1935, as amended, 11 Annotated Laws of Puerto Rico [LPRA], Section 1 and following sections, inasmuch as the Plaintiff was qualified to continue working, whether for BRISTOL or for JOHNSON CONTROLS.**

26.  In the alternative, said violations constitute wrongful dismissal, in violation of Law No. 80, dated May 30, 1976, as amended; 29 Annotated Laws of Puerto Rico, Section 185 and following sections.  For this reason, it is fitting, pursuant to law, that compensation be paid, as well as the salary which he ceased to collect and the vacation days and sick leave accrued by the latter.

28.  **After having reported to the State Insurance Fund Corporation, the Plaintiff was fired when he reported to work, thereby deprived of his right to reinstatement to his position.**

29.  On September 21, 2011, Defendants contacted the Plaintiff, [to tell him] that his dismissal was due to the fact that he had reported to the State Insurance Fund Corporation when the subcontracting had occurred and after having filed a claim with the Department of Compliance (hereafter "Compliance").

30.  The actions on the part of Defendants also constitute a violation of the provisions of Law No. 115, dated November 20, 1991, as amended, also known as the Law against Retaliation.

33.  Co-Defendants BRISTOL and JOHNSON CONTROLS, together and as part of the contract of operations, promoted and carried out a violation of the applicable legal provisions protecting the Plaintiff.

34.  No operations contract can be in violation of the employment part to which the Plaintiff is entitled under the scope of the State Insurance Fund Corporation Law.

35.  Co-Defendants acted in connivance and their actions were in clear violation of the Fund Law and [Law against] Retaliation, for the purpose of eluding their responsibilities towards the Plaintiff which they had contracted by virtue of the valid employment contract existing between BRISTOL and the Plaintiff, and between the latter and JOHNSON CONTROLS, who had possession of his job and who also refused to reinstate him to it.

37.  The violations of law committed by the Defendants have caused and continue to cause the Plaintiff economic and financial harm since they have negatively affected his credit rating and have prevented him from fulfilling his economic responsibilities, such as paying his debts and supporting his children, have resulted in the loss of assets, and have deprived him of income and benefits and salary which the Plaintiff [formerly] received from his job and for the salary which he ceased to collect as of that moment in which the

CIVIL 12-1256CCC                            4

> Defendant refused to reinstate the Plaintiff to his job, all of which amount to a sum of not less than $400,000.00 and which continues to increase from month to month, in accordance with the salary and fringe benefits of the Plaintiff (such as, but not limited to, the medical plan, bonuses, retirement, etc.), over the course of time.
>
> 38.   In addition, said illegal acts have caused and continue to cause pain and mental anguish to the Plaintiff, which amount, as of the present date, to $350,000.00, as a consequence of the abusive treatment which he has suffered, specifically including anxiety, insomnia, profound pain, anguish and fear, and estrangement from his family and spouse; he has not been able to find work, despite his efforts, in addition to his mental suffering.
>
> 39.   **Thus, the Plaintiff, by virtue of the law, is also entitled to reinstatement to the position which he formerly held while he was receiving the benefits from the State Insurance Fund Corporation.**[2]

See docket entry 8-1 (emphasis ours).

As these allegations reflect, the main thrust of plaintiff Otero-Mercado's state claims are anchored on his action seeking reinstatement and damages pursuant to § 7 of PRWACA.  This provision protects the job of a worker who suffers a work-related accident, reports to the State Insurance Fund (SIF) and receives treatment by establishing the right to be restored to his job, upon request, within fifteen (15) days from the date he is discharged from treatment, provided such demand is made within twelve (12) months from the date of his accident.  Otero-Mercado has repeatedly asserted in these allegations that the reason why his employer decided to discharge and to retaliate against him was solely because he sought treatment and the job protection afforded by the PRWACA after he suffered his accident.  He specifically alleged that he was terminated after he timely exercised his statutory right to be reinstated to the position he held at the company before the accident.

The relevant provision of the PRWACA cited above provides as follows:

> In the cases of working disability according to the provisions of this chapter, the employer shall be under the obligation to reserve the job filled by the

---

[2]Plaintiff also makes a passing reference at ¶ 36 of his Complaint to discriminatory treatment on the part of the co-defendants due to his age.

CIVIL 12-1256CCC                              5

laborer or employee at the time the accident occurred, and to reinstate him/her therein, subject to the following conditions:

(1)   That the laborer or employee demand reinstatement from his/her employer in his/her job within the period of fifteen (15) days counted from the date the laborer or employee is discharged from treatment or authorized to work with the right to receive treatment, and provided such demand is not made after the lapse of twelve (12) months from the date of the accident;

(2)   the laborer or employee be mentally and physically fit to fill said job at the time he/she demands reinstatement from his/her employer, and

(3)   that said job still exists at the time the laborer or employee demands reinstatement. (The job shall be understood to exist when the same is vacant or is being filled by another laborer or employee. The job shall be presumed to be vacant when the same was filled by another laborer or employee within thirty (30) days following the date in which the demand for reinstatement was made.)

If the employer does not comply with the provisions of this section, he/she shall be under the obligation to pay the laborer or employee or his/her beneficiaries the wages said laborer or employee would have received if reinstated; also, the employer shall be responsible for all damages he/she has caused him/her. The laborer or employee or his/her beneficiaries may prosecute and file the corresponding claim for reinstatement and/or damages in court through ordinary proceedings or through the procedure for claiming wages set up by §§ 3118-3132 of Title 32.

11 L.P.R.A. § 7.

The procedure for claiming wages that this PRWACA provision alludes to is precisely the one that was utilized by plaintiff Otero-Mercado before the Commonwealth court.  The caption of the complaint refers to "summary proceedings based on Law No. 2 of October 17, 1961" and allegation 41 reads "[t]he present complaint has been brought by way of summary proceedings, as provided by Law No. 2, dated October 17, 1961, in its amended form."  Law No. 2 appears reported at 32 L.P.R.A. §§ 3118-3132.  The essence of this proceeding for wage claims is its summary nature.  The relevant provisions which define its nature appear at 32 L.P.R.A. § 3118:

Whenever a workman or employee should have to claim from his employer any equity or benefit, or any sum on account of compensation for work or labor done for said employer, or for compensation in case said workman or employee should have been discharged from his work without just cause, he may choose to appear before the Part of the District Court or of the Court of First Instance, as the case may be, of the place where the work was done, or

where said workman or employee resides on the date of the claim, and file a complaint against the employer, which complaint shall be made out or filled in, as the case may be, by the judge, or the Clerk of the court, in which the workman or employee shall set forth the facts upon which the claim is grounded.

In the exercise of any action that may be brought under the procedure established by §§ 3118-3132 of this title, the Secretary of Labor and Human Resources may sue, motu proprio or at the instance of one or more workmen or employees having an interest in the matter, and on behalf and in representation of one or more of such workers or employees who are in similar circumstances, and he may also act as the complainant or intervener in any claim initiated under the procedure established in §§ 3118-3132 of this title.

In addition to his claim for reinstatement following his disability and of retaliation for having claimed his rights as an injured worker under Puerto Rico's worker's compensation law, plaintiff included a federal claim arising under ERISA to receive the benefits of an early retirement plan.  Although plaintiff Otero-Mercado does not state the specific ERISA provision, it is clear from the relevant allegations of the complaint, specifically ¶¶ 22, 23, 24 and 40, that these state an ERISA claim pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides:  "A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

On April 17, 2012, Bristol Myers Squibb Puerto Rico, Inc. and Bristol-Myers Squibb Puerto Rico, Inc. Retirement Income Plan (BMS Plan) filed a Notice of Removal (docket entry 1) based on complete preemption by ERISA.  The Notice included the following statements in support thereof:

(1)   "from the face of the Complaint it is clear that plaintiff has a colorable claim pursuant to ERISA for alleged denial of Rule of 70 benefits under an employee pension plan."

(2)   "plaintiffs' claim falls squarely under § 502(a)(1)(B), [29 U.S.C. § 1132(a)(1)(B)]."

(3)   "because plaintiff is a beneficiary seeking to recover benefits from an ERISA plan, the state law claim is displaced by ERISA's civil enforcement provision, 29 U.S.C.

CIVIL 12-1256CCC                              7

§ 1132(a)(1)(B), which provides an exclusive federal cause of action for resolution of such dispute." See paragraphs 5 & 7 of Notice of Removal.

Plaintiffs filed a Motion to Remand on May 16, 2012 (**docket entry 6**), pointing out, among other arguments, that the "BMS Plan was not included in the complaint as a co-defendant." (Emphasis ours.)  Plaintiff Otero-Mercado is correct in stating that he could have sued the BMS Plan and chose not to.  At paragraph 4 of the remand motion, he also argues that he filed the case "under Act No. 2 of October 17, 1961, specifically for being a claim directly related to employee's benefits under Puerto Rico state laws . . . regulating labor relations" and correctly avers that the section on nonremovable actions, specifically 28 U.S.C. § 1445(c), provides that "a civil action in any state court arising under the workmen's compensation laws of such state may not be removed to any district court of the United States."  Defendants' May 29, 2012 opposition (docket entry 10), brought once again by the BMS Plan as one of two defendants, which it is not, countered at Part C that "removal was based on the complete preemption doctrine."  Without conducting any analysis to determine the critical removal issue, that is, whether plaintiff's state claims fall "within the scope" of ERISA's § 502(a)(1)(B), defendants jump to the conclusion that "inasmuch as plaintiff seeks to recover benefits allegedly due to him, and which actually fall under the terms of the BMS Plan, his  'State law claims' clearly fall within the scope of section 502(a)(1)(B) of ERISA and, as such, are completely preempted regardless of plaintiff's 'state law claims' characterization."  Opposition, at p. 6. Again, in conclusory fashion, movants assert that "the state law claims invoked by plaintiff in his complaint are an 'alternative enforcement mechanism' of ERISA § 502(a) and as such are completely preempted." Id., at p. 7.  How plaintiff's claim for reinstatement within the twelve month period following his work-related injury, including the wages which he would have received if reinstated and damages which the employer allegedly caused him, filed under section 7 of Puerto Rico's WACA, can be classified as "an alternative enforcement mechanism under

CIVIL 12-1256CCC                                8

ERISA" is simply not explained.  Defendants make instead an incorrect characterization of plaintiff's state claims under PRWACA, Puerto Rico's Act 80 for unjust dismissal, and Law No. 115 to redress retaliation, in an effort to mesh these state law claims as dependent on ERISA.  They define the Puerto Rico law claims as duplicates of ERISA which rely entirely on the ERISA civil enforcement exclusive remedy to establish the employer's liability.

        BMS not only raises complete preemption under section 502(a) of ERISA, 29 U.S.C. § 1132(a), as its basis for removal to federal court, but also seeks in its opposition to remand that the Puerto Rico law claims be dismissed on complete preemption grounds.  The complete preemption analysis can be made only under ERISA's § 502(a).  Under the complete preemption doctrine if the state law cause of action comes within the scope of ERISA's exclusive remedy integrated in its § 502(a) enforcement provisions, even if couched in terms of state law, it is in reality a federal claim preempted by ERISA.  Hence, as earlier stated, the inquiry is whether Otero-Mercado's causes of action under Puerto Rico's WACA, Law 80 and Law 115 fall within the civil enforcement provisions of § 502(a).

        The boundaries of ERISA'S § 502(a) preemption, that is, whether the state causes of action fall within the scope of an ERISA § 502(a) remedy, were clearly set out in AETNA Health, Inc. v. Dávila, 542 U.S. 200, 209, 124 S.Ct. 2488, 2495 (2004).  It is not any state law claim that falls within its scope.  In Dávila, the Court determined that "any stale-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is, therefore, preempted."  ERISA 502(a)(1)(B) provides:  "a civil action may be brought -- (1) by a participant or beneficiary -- . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  A clear example of this was given by the First Circuit in Danca v. Private Health Care Systems, Inc., 185 F.3d 1, 5 (1st Cir. 1999), where the Court observed:  "It . . . follows that state law tort suits that allege the improper processing of a

claim for benefits under an ERISA-covered plan . . . fall within the scope of § 502(a)."

Finding complete preemption under ERISA, justifying removal and dismissal, the Court

concluded at page 7: ". . . we find that the tort claims alleging negligence in defendants'

(1) failing to follow Danca's physician's recommendations  and (2) failing to ensure that the

evaluation of treatment requests in the course of precertification were made and overseen

by capable personnel in a competent manner are alternative enforcement mechanisms

under ERISA § 502(a)."

This reasoning, although amplified, appears in Dávila at p. 2496:

It follows that if an individual brings suit complaining of a denial of coverage
for medical care, where the individual is entitled to such coverage only
because of the terms of an ERISA-regulated employee benefit plan, and
where no legal duty (state or federal) independent of ERISA or the plan terms
is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).

The Dávila court adds the factor of a duty that arises independently of ERISA or the

plan terms to determine whether the state law claim lies within the scope of the ERISA civil

enforcement mechanism.  The Court determined in Dávila that the potential liability under

the state law derived entirely from the rights and obligations established by the respondent's

ERISA benefits plan, sought only to rectify an alleged wrongful denial of benefits under such

plan, and did "not attempt to remedy any violation of a legal duty independent of ERISA."

Id., at p. 2498.

Following the Dávila complete preemption ERISA analysis, the Third Circuit in

Pascack Valley Hospital, Inc. v. Local 464AUFCW Welfare Reimbursement Plan,

388 F.3d 393 (3rd Cir. 2004), reached the conclusion that the state law claims brought by

the hospital for breach of contract in state court against an employee welfare benefits plan

were "predicated on a legal duty that is independent of ERISA . . . although derived from an

ERISA plan."  It also found that the hospital's claim "could not be asserted under the civil

enforcement provision of ERISA," and "the rights or immunities created under ERISA are

not elements, let alone essential elements, of the plaintiff's claims." Id., at pp. 402, 404. Accordingly, the Third Circuit remanded the case to the Superior Court of New Jersey.

Having conducted an analysis of Otero-Mercado's state claims filed before the Commonwealth court and the Puerto Rico laws invoked in support thereof, the Court finds that the following state law claims do not fall within the scope of ERISA § 502(a), are not completely preempted and shall be remanded:

(1)   The claim under the PRWACA for reinstatement and damages.

(2)   Law 80 claim for unjust dismissal.

(3)   Law 115 claim based on retaliation.

(4)   The age discrimination claim under local law.

All of these claims arise independently of ERISA or the plan terms. As described earlier, the state claims are the principal ones in this case. The illegal discharge claims and the retaliation claims are based on the employer's duty to protect a worker's employment and the employee's corresponding right to employment during the one-year reserve under the PRWACA. All of these claims are related to the independent statutory duty to reinstate an injured worker to his position within one year of the accident and do not have any link to the rights of plaintiff under the ERISA early retirement plan. Defendants misstate the nature of the state claims by arguing at page 8 of their opposition to remand (docket entry 10) that "if plaintiff were to receive 'Rule of 70' benefits provided under the BMS plan, plaintiff would have no cause of action under the P.R. Worker's Compensation Act." The allegations of the complaint are focused and aimed directly at obtaining the remedy of reinstatement as well as wages lost and other damages suffered during the period in which plaintiff did not receive his salary due to the violation of the employer's duty to restore him to his job, upon request and upon compliance with the workmen's compensation statute. The allegations are couched in language that clearly aver that this is the primary remedy and that only if the employer were exempt from reinstating plaintiff would he then seek the benefits of the

pension plan.  Plaintiff would not be eligible for early retirement if he is working.  Therefore, if reinstated, Otero-Mercado would be precluded from simultaneously claiming benefits under the early retirement plan.  His right to be restored does not depend on his rights under the plan, but solely upon prevailing in his state law claim for protection as an injured worker to return to his job after having been authorized by the State Insurance Fund.  His Puerto Rico law claims are not to recover benefits under the plan or to enforce or clarify his rights under the same.  Neither is plaintiff suing BMS, under his state law claims, as an ERISA plan participant or beneficiary.

There are no allegations in his state law claims in the sense that his employer BMS discharged him or discriminated against him because of his status or any action taken by him as an ERISA participant or as a beneficiary under his plan, the "Rule of 70" benefits. None of the state law claims have any link nor depend on the rights of plaintiff under the ERISA retirement plan.  His state law causes of action neither duplicate, supplement nor supplant the ERISA civil enforcement remedy provided in § 502(a).

It is important to note, contrary to defendant's mischaracterization of the state claims, that these claims depend on plaintiff Otero-Mercado proving that his employer violated its obligation to reserve him his job and to reinstate him if he fulfilled the requirements of § 7 of the PRWACA.  Neither the reinstatement claim under the workmen's compensation statute nor the unlawful termination and retaliation claims under Puerto Rico's Law 80 or Law 115 require proof of plaintiff's rights or benefits under the plan.  The termination claims all begin and end with plaintiff's rights and his employer's duty to restore him to work pursuant to the state laws previously cited.

There is no question that the alternative federal claim for ERISA civil enforcement of his rights under the plan is removable.  However, since his state law claims do not fall within the scope of ERISA § 502(a), further considering that the predominant claims are strictly based on state law and that the concrete factual allegations support only the P.R.

CIVIL 12-1256CCC                              12

Workmen's Compensation action, the local Law 80 and Law 115 claims, the Court, pursuant to 28 U.S.C. § 1445(c), and exercising its discretion under the § 1441(c) remand provision, REMANDS all matters in which state law predominates.  Accordingly, it is hereby ORDERED that the state law claims be remanded to the Court of First Instance of the Commonwealth of Puerto Rico, Superior Part of Arecibo, and that the ERISA federal claim on the "Rule of 70" benefits remain before this Court.

SO ORDERED.

At San Juan, Puerto Rico, on October 11, 2012.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge